### RUTAN *v.* STRAEHLY.

1. FRAUD — RESCISSION — TENDER — PLEADINGS — AMENDMENT — ACTION FOR DAMAGES.

Failure of plaintiff to tender notes which she had received from defendant did not preclude her recovery from him of amount she had entrusted to him for investment where, although her declaration may have been based on theory of rescission, no error was assigned because court granted leave to amend before trial was had by court without a jury so as to state a cause of action for damages for fraud and deceit.

2. Pleading—Surplusage—Assumpsit—Torts—Waiver.

Counts in assumpsit in a declaration containing a count in tort and common counts became surplusage where plaintiff did not waive the tort, hence her pleadings are not objectionable because of uncertainty in not referring to statute permitting one to waive a tort and sue in assumpsit (3 Comp. Laws 1929, § 14007).

3. Assumpsit—Waiver of Tort—Fraud.

While it is better practice to refer to statute permitting one to waive a tort and sue in assumpsit, a declaration in assumpsit setting up representations claimed to be false and fraudulent, and upon which deceit will lie, is sufficient to support a judgment, although in the form of an action for breach of contract (3 Comp. Laws 1929, § 14007).

4. Fraud—Funds Left for Investment—Evidence.

In action for damages for fraud and deceit in the handling of plaintiff's money left with defendant for purposes of investment, findings of court that defendant did promise to give a paper to plaintiff stating that certain notes in which he was payee were hers but that after plaintiff procured them she discovered he had not invested her funds therein and that the notes were worthless *held*, amply supported by testimony.

5. Same — Promises — Nonperformance — Device to Perpetrate Fraud—Present Intent of Nonperformance.

While generally fraud cannot be predicated upon statements promissory in nature and relating to future actions, or upon failure to perform a promise or an agreement to do something at a future time, it may be predicated on the nonperformance of a promise where the promise is the device used to accomplish the fraud or where a relation of trust and confidence exists between the parties or where the promise is accompanied by a present intention not to perform it.

6. Same—Promise as Device to Perpetrate Fraud—Inferences.

In action for fraud incident to investment of plaintiff's funds which she had entrusted to defendant, facts *held*, to justify inference that his promise to deliver another person's notes to her in order to obtain his own held by her was merely the device used to accomplish the fraud where notes ultimately given her were worthless.

7. Same—Action for Damages—Tender.

In action for fraud in which plaintiff clearly affirmed the transaction and sought damages for fraud and deceit, tender

of worthless notes she had received from defendant was unnecessary.

8. TRIAL—PLEADING—FINDINGS OF COURT—INCONSISTENT COUNTS.
Rule that findings of court in case tried without a jury must clearly sustain one count of the declaration without support from the other applies only where the counts are inconsistent and is inapplicable where they are not inconsistent.

9. SAME—FRAUD—ASSUMPSIT—JUDGMENT.
Under declaration containing a count in fraud and one in assumpsit, finding by trial judge that defendant was guilty of fraud removed all uncertainty on what count the judgment was based.

10. APPEAL AND ERROR—MEASURE OF DAMAGES—QUESTIONS REVIEWABLE.
An alleged error in computation of damages not having been made a ground for appeal, the question is not considered by the Supreme Court.

11. FRAUD—PROMISES—EVIDENCE.
In action for fraud incident to defendant's investment of plaintiff's money which she had entrusted to him, his promise that he would give her a writing acknowledging the fact that he had her money and thereafter giving her notes which were worthless and known by him to be such *held*, sufficient to justify finding him guilty of fraud notwithstanding other statements he made when such promise was given were subsequently made good by him.

12. SAME—FINDINGS OF COURT—EVIDENCE—WORTHLESS NOTES.
Finding of court that notes given by defendant to plaintiff were worthless and that defendant had knowledge of their uncollectibility *held*, justified by evidence in plaintiff's action for damages for fraud.

13. SAME—PREVIOUS SETTLEMENT AGREEMENT.
A settlement agreement made between the parties to an action of fraud for damages would not preclude recovery by plaintiff where fraud complained of was perpetrated by defendant after the settlement agreement was entered into.

14. SAME—INDORSEMENT OF WORTHLESS NOTES WITHOUT RECOURSE.
Fact that defendant indorsed worthless notes without recourse when he turned them over to plaintiff when he knew they were uncollectible *held*, no bar to recovery by plaintiff in action for damages for fraud and deceit.

Appeal from Branch; Hatch (Blaine W.), J., presiding. Submitted April 6, 1939. (Docket No. 45, Calendar No. 40,427.) Decided June 22, 1939.

Action by Alletta B. Rutan against James A. Straehly for damages for alleged fraud in the investment of funds. Judgment for plaintiff. Defendant appeals. Affirmed.

*Raymond H. Dresser,* for plaintiff.

*J. Paul Wait,* for defendant.

CHANDLER, J. In 1918, following the death of her husband, plaintiff turned over the sum of $3,000 to the defendant for the purpose of having the latter invest the same for her. Defendant used the funds to purchase bonds, and for a 10-year period he turned over to plaintiff, annually, an income of $180 each year. There was no agreement in regard to defendant's compensation but there is evidence that he retained one per cent. of the income of some of plaintiff's investments which were earning seven per cent. Plaintiff had knowledge of and assented to this practice.

Defendant claims that just prior to 1929 he was holding for plaintiff a $2,000 bond in the Detroit Gas Company and that the remaining $1,000 was invested in real estate bonds.

The parties resided in different localities, but sometime prior to August, 1929, defendant saw plaintiff and recommended that the latter purchase an insurance annuity. However, this suggestion was not acted upon. Thereafter, on August 3, 1929, defendant made a settlement with plaintiff whereby she accepted from him his six promissory notes for $500 each, bearing six per cent. interest, each note being

dated August 1, 1929, and due consecutively over a period of six years, commencing August 1, 1930. Thereupon, the plaintiff signed a settlement receipt.

When defendant delivered his notes to plaintiff, he had her original $2,000 Detroit Gas Company bond and $1,000 in cash, uninvested, both of which items he retained. At the trial, defendant stated that his notes were given to serve as interim protection in lieu of certain notes of F. D. Lake which he was to deliver subsequently to plaintiff.

Plaintiff testified, however, that the Lake notes were not mentioned in 1929 and that she never heard of them until June, 1933.

Two of defendant's notes which plaintiff held were renewed, the new notes being dated August 1, 1930, and August 1, 1931, respectively. In August, 1930, defendant sent plaintiff $180 to be credited as interest on the six notes, $30 to each note. No further interest was paid after September, 1931.

In April, 1933, defendant went to see plaintiff at Elkhart, Indiana, informed her that he was going into the peppermint oil business, and requested that she give him back his notes so that they would not be reflected on his financial statement at the bank where he desired to obtain a loan. He stated that the loan would enable him to go ahead with the peppermint business and that he would then see that she received her interest. Plaintiff consented to turn over the notes, providing defendant gave her a paper to show that he had her money, and he agreed to do so. On June 1, 1933, he prepared and signed a paper (referred to as a proxy) stating that he had in his possession notes signed by F. D. Lake in the amount of $3,000, which notes, although made payable to him, were the property of plaintiff. Plaintiff testified that this was the first time she had heard of the Lake notes.

The so-called Lake notes originate in 1927 when F. D. Lake, president of F. D. Lake, Inc., a Michigan corporation, handling builders' and contractors' supplies, gave his notes to defendant in purchase of $4,000 par value of F. D. Lake, Inc., stock which defendant had previously purchased for $3,000 while in the employ of said company in 1926. Lake paid $25 per week on said notes for a time, and they were renewed from time to time. In 1931, the company went into bankruptcy, and Lake was unable to continue payments. The last renewal notes were taken in August, 1932, and January, 1933. Defendant made efforts to collect them after they became due, but without success. He retained them, however, and had some of them pledged at various banks to secure his personal indebtedness.

After June, 1933, plaintiff tried to obtain the Lake notes from defendant, and after they were received by her, he offered to help collect them and urged her not to attempt forced collection thereof. In November, 1937, plaintiff caused an investigation to be made and learned that her money had not been invested in said notes, but that they had arisen out of the aforementioned stock transaction between the defendant and Mr. Lake. Investigation also revealed that the notes were uncollectible.

On March 9, 1938, plaintiff, by summons, started this suit at law against defendant for fraud and deceit, filing her declaration April 6, 1938. The declaration contained a special count in trespass on the case, alleging breach of duty by defendant safely to invest and redeliver plaintiff's funds and alleging false, fraudulent, negligent and improper use of her funds for defendant's own purposes. The declaration also contained the common counts.

The case came on for trial on July 6, 1938, and before trial, during a colloquy between the court and opposing counsel in an effort to settle the issues in-

volved, defendant's counsel moved to strike plaintiff's pleadings on the ground that her reply set up a cause of action different from that alleged in the declaration. Counsel for plaintiff moved to amend the declaration to include the new matter, claiming that the same was not known to him when the declaration was prepared. Leave to amend was granted, and the trial proceeded before the court without a jury.

The court entered a finding in favor of plaintiff and assessed damages against defendant in the amount of $3,000, plus interest from April, 1933. Defendant moved for a new trial, which was denied, and this appeal followed.

Numerous grounds for appeal and assignments of error are claimed by defendant. Our discussion, however, will be confined to questions raised in the briefs of counsel.

Did the plaintiff elect to affirm and not rescind?

The defendant claims that the original declaration was for rescission and not affirmance, as shown by the fact that plaintiff asks for the return of $3,000; and that the attempt at rescission failed for lack of tendering the notes. Plaintiff says no rescission is claimed, but that she is seeking damages for the alleged fraud. The trial court held plaintiff had a right to affirm the transaction and sue for fraud and deceit, and apparently considered the case on that basis.

Even if it be conceded that plaintiff's original declaration was on the theory of rescission, it was amended before trial so as to stand as a suit for damages for fraud and deceit. Defendant does not assign as error the trial court's action in allowing the amendment.

Defendant complains of uncertainty in plaintiff's pleadings because she does not refer to 3 Comp. Laws 1929, § 14007 (Stat. Ann. § 27.651), which per-

mits one to waive a tort and suit in assumpsit. Plaintiff did not waive the tort, therefore her counts in assumpsit became surplusage. *Kirker* v. *Larson,* 254 Mich. 648. The case of *Hallett* v. *Gordon,* 128 Mich. 364, holds that under the foregoing statute, while it would be better practice to refer to the enactment, a declaration in assumpsit setting up representations claimed to be false and fraudulent, and upon which deceit will lie, is sufficient to support a judgment, although in the form of an action for breach of contract.

Defendant assigns as error the fact that plaintiff alleged that he procured his notes from her by promising to execute a new promise and obligation to repay the sum of $3,000, plus interest, but that this allegation was not sustained by proof and no finding of such fact was made by the trial court. The court did find, however, that defendant promised to give plaintiff "a paper showing that he had her money. On June 1, 1933, he prepared and signed a paper stating that he had in his possession notes signed by F. D. Lake, in the amount of $3,000, which notes, although made out to defendant, were the property of plaintiff. * * * Plaintiff, trusting in the defendant's integrity, took said paper, presuming that he had invested her funds in said notes as a loan. Plaintiff then tried for some time to get the notes, and when she finally did receive them, she caused an investigation to be made and found that her funds had not been invested in said notes, and that said notes were worthless." The testimony amply supports these findings.

We are not unmindful of the general rule that fraud cannot be predicated upon statements promissory in nature and relating to future actions, or upon failure to perform a promise or an agreement to do something at a future time. There are excep-

tions to this rule, for fraud may be predicated on the nonperformance of a promise in certain cases where the promise is the device used to accomplish the fraud, or where a relation of trust and confidence exists between the parties. 12 R. C. L. p. 257. Another exception is when the fraud is based upon a promise accompanied by a present intention not to perform it. 12 R. C. L. p. 261.

No proof of defendant's intent at the time of the alleged fraudulent transaction was produced. But the facts and circumstances of the case justify but one reasonable inference; that is, that defendant's promise was the device used to accomplish the fraud which consisted of obtaining his own notes from plaintiff and promising, but failing, to give her any obligation of value in return.

Was plaintiff required to tender back the Lake notes before bringing suit?

It is clear, both by the pleadings and testimony, that plaintiff was affirming the transaction, and suing for damages for fraud and deceit. The cases cited by defendant relative to tender being necessary in cases of rescission are, therefore, inapplicable.

Defendant complains because the court's findings do not clearly sustain one count of the declaration without support from the other, citing *Capen* v. *Stevens,* 29 Mich. 496. This rule applies only where the counts are inconsistent. Here the counts are not inconsistent. In *Kirker* v. *Larson, supra,* we said:

"There not having been any election or waiver of counts by plaintiffs, nor any general verdict by a jury, but a finding by the trial judge that defendant was guilty of fraud, it removed all uncertainty on what counts the judgment was based. It was on the fraud counts, and not on the common counts, of the declaration."

Defendant questions the measure of damages, but since the alleged error in computing the damages is not made a ground for appeal, the question is not considered.

Is appellant guilty of fraud and deceit on all of the evidence? It is true that defendant was not guilty of fraud because he told plaintiff that he would like to obtain his notes so that they would not affect his credit at the bank. He did obtain a loan and enter the peppermint oil business as he represented. However, the trial court did find that defendant acted fraudulently in inducing plaintiff to part with defendant's notes on his promise to give her a writing acknowledging the fact that he had her money, and thereafter giving her the worthless Lake notes.

Mr. Lake testified that when he executed the last renewal notes in August, 1932, and January, 1933, he had no assets which would enable him to pay them and that he so informed the defendant. The last payment made by Mr. Lake on the notes was in 1929 or 1930. Defendant testified that, "In April, 1933, I knew he (Lake) was not in a position to pay those notes." Thus, it appears that there was basis for the court to find that the notes of Lake were worthless when delivered to plaintiff, and that defendant had knowledge of their uncollectibility.

Defendant contends that plaintiff cannot recover because of the settlement had between them, and because the Lake notes were indorsed to her without recourse. This question merits no discussion because plaintiff bases her action on a transaction that occurred after the alleged settlement. The settlement, therefore, does not control the subsequent transaction in which fraud is alleged. The indorsement of the Lake notes without recourse is not a material point because plaintiff is not suing on the notes. Her suit is for damages for fraud and deceit.

There was ample testimony to support the court's findings of fact, and there was no error in his conclusions of law.

The judgment is affirmed, with costs to plaintiff.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.