**DINSMORE INSTRUMENT COMPANY, and Robert Dinsmore, Plaintiffs,**

v.

**BOMBARDIER, INC., and Digico Ltee, Defendants.**

Civil Action No. 97–74834.

United States District Court, E.D. Michigan, Southern Division.

April 2, 1998.

Michael B. George, Flint, MI, for Dinsmore Instrument Co., Robert Dinsmore.

Dennis Zamplas, Rachel C. McCoy, Zamplas, Johnson, Bloomfield Hills, MI, for Bombardier, Inc.

J. Michael Malloy, III, Troy, MI, Mary Jo Diegel, Shelby Township, MI, for Digico Ltee.

**OPINION AND ORDER**

FEIKENS, District Judge.

## 1. FACTS

Plaintiff Robert Dinsmore is the sole owner of plaintiff Dinsmore Instrument Company. Dinsmore manufactures compasses for installation in automobile dashboards (plaintiffs hereafter referred to collectively as "Dinsmore"). Defendant Bombardier, Inc. is a Canadian firm engaged in the manufacture of diverse product lines such as jet aircraft, aircraft spare parts, and recreational vehicles. This litigation involves the "Ski–Doo" line of personal jet-ski recreational water vehicles. Defendant Digico Ltee is a Canadian subsidiary of Bombardier (defendants hereafter referred to collectively as "Bombardier").

In early 1995, Bombardier contacted Dinsmore to purchase compasses for use in the Ski–Doo jet-skis. The parties engaged in a series of tests and alterations to the compasses to make them functional in the jet-skis. Without a written contract, Bombardier placed its first order for compasses on October 16, 1995. Dinsmore shipped large quantities of compasses to Bombardier in various installments over the next ten months. The process of altering the compasses continued during this time.

Dinsmore alleges that timely payments for the compasses were not made, and that an unpaid balance of $189,241.57 still exists. Additionally, Dinsmore claims damages totaling $91,273,957.11 as follows:

| | |
|---|---|
| 1) Compensatory damages [1] = | $213,957.11 |
| 2) Lost Future Profits = | $87,080,000.00 |
| 3) Damage to Dinsmore's Business reputation = | $700,000.00 |
| 4) Intentional Interference by Digico = | $2,500,000.00 |
| 5) Exemplary Damages = | $500,000.00 |
| 6) Mental Anguish = | $280,000.00 |

Dinsmore seeks these damages under claims of Breach of Contract, Fraudulent Misrepresentation, Innocent Misrepresentation, Account Stated, Tortious Interference with a Contract, and Exemplary Damages.

Bombardier pleads various affirmative defenses, the most important being the assertion that the compasses were not waterproof and therefore did not meet Bombardier's

---

**1.** Dinsmore calculates Compensatory Damages ($213,957.11) as being the sum of the unpaid balance ($189,241.57) plus interest ($24,715.54).

specifications. It contends it is under no obligation to pay for those nonconforming goods and moves for partial summary judgment to limit Dinsmore's suit to the compensatory damages claim. This motion, if granted, would reduce Bombardier's potential liability from over $91 million to $213,957.11.

## 2. ANALYSIS

### A. Standard of Review

In deciding Bombardier's motion, I look to all "pleadings, depositions, answers to interrogatories, and admissions on file" to determine if a genuine issue of material fact exists. Fed. R. Civ. Pro. 56(c).

### B. Jurisdiction and Choice of Law

■ The defendants are Canadian corporations, plaintiffs are Michigan residents, and the amount in controversy is greater than $75,000. This satisfies the requirements of diversity jurisdiction. 28 U.S.C. § 1332(a)(2) (1998).

■ The parties have not argued choice of law, so I rely on the well-settled principle that federal courts sitting in diversity of citizenship cases apply the laws of the state in which the district court is located. *Erie Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where the parties fail to specify which state's substantive law governs, courts "fall back on the law of the forum." *Laxalt v. McClatchy*, 116 F.R.D. 438, 451 (D.Nev.1987). Thus, Michigan's substantive law controls the present dispute.

### C. Economic Loss Doctrine

Bombardier's motion for partial summary judgment is based on the theory that Dinsmore's suit is an action for nonpayment of amounts due on a commercial contract. Such an action is governed by Michigan's version of the Uniform Commercial Code ("UCC"). Bombardier points out that Dinsmore attempts to include tort claims in its suit in order to recover types of damages prohibited by the UCC. Bombardier seeks dismissal of these non-UCC claims under Michigan's "economic loss" doctrine.

The Michigan Supreme Court formally adopted the "economic loss" doctrine in *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612 (Mich.1992). *Neibarger* held that plaintiffs who bring suit under the UCC for commercial losses are restricted to UCC remedies. The court held that allowing additional remedies would "blur the distinction between tort and contract" by undermining the Legislature's limitations on Article 2 liability. *Id.* at 528, 486 N.W.2d 612. Courts should prohibit a plaintiff from characterizing contract claims as tort claims to prevent the UCC from being rendered meaningless as contract law "drown[s] in a sea of tort." *Id.* at 528, 486 N.W.2d 612. *Neibarger* involved plaintiffs who purchased a defective milking system from the defendants. The alleged defect caused plaintiffs' cows to become ill. The ultimate issue in *Neibarger* turned on whether plaintiffs brought a contract claim which was barred by the UCC's statute of limitations, or a tort claim which was still open under the effectively longer product liability limitation period. In applying the newly adopted economic loss doctrine, the court in *Neibarger* held that "a review of the pleadings and depositions reveals that the damages sought by the plaintiffs are commercial losses which can be remedied *only* under the provisions of the UCC." *Id.* at 532, 486 N.W.2d 612 (emphasis added). The court then applied the UCC statute of limitations and dismissed plaintiffs' claims.

Certain passages in *Neibarger* suggest that the economic loss doctrine applies exclusively "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes." *Id.* at 528, 486 N.W.2d 612. Only cases involving a seller as the defendant have followed *Neibarger* in applying the economic loss doctrine. *See Allmand Associates, Inc. v. Hercules, Inc.*, 960 F.Supp. 1216 (E.D.Mich.1997); *Huron Tool and Engineering Company v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 532 N.W.2d 541 (Mich.Ct.App. 1995); *Snyder v. Boston Whaler, Inc.*, 892 F.Supp. 955 (W.D.Mich.1994). Whether the economic loss doctrine applies to cases where the defendant is a buyer appears to be a question of first impression in Michigan.

In answering this question, I note that the same factors which led the court in *Neibarger* to adopt the economic loss doctrine favor its application to suits against a defendant buyer. Article 2 limits both sellers' and buyers' damages. Mich. Comp. Laws Ann. §§ 440.2708, 440.2714 (West 1994) ("§ 2–708," and "§ 2–714"). Both buyers and sellers rely on these limitations to make predictions regarding their potential liability when entering into a contract. The parties inevitably "incorporate those predictions into the price or terms of the sale." *Neibarger*, 439 Mich. at 528, 486 N.W.2d 612. Exposing a party to non-UCC damages eviscerates their legitimate expectations by creating "a remedy not contemplated by the Legislature when it adopted the UCC." *Id.* at 528, 486 N.W.2d 612. Such a result is even more unfair to buyers who breach a commercial contract because § 2–714(3) insulates a breaching buyer from having to pay consequential damages while § 2–708(2) affords no similar protection to a breaching seller. I believe the Michigan Supreme Court will use the economic loss doctrine to protect buyer's expectations in the same manner it protects seller's expectations. I therefore declare that Michigan law limits a buyer who causes economic loss by breaching a commercial contract to being liable solely for those remedies "provided by the UCC." *Id.* at 538, 486 N.W.2d 612.

### D. Exceptions to the Economic Loss Doctrine

Dinsmore does not dispute that the economic loss doctrine applies to its suit. Instead, it argues that it pleads a claim of fraud in the inducement which is an exception to the economic loss doctrine. Dinsmore asserts that Bombardier ordered compasses and refused to pay for them as part of a scheme to bankrupt Dinsmore and steal Dinsmore's patents. Bombardier allegedly committed fraud by promising to pay for the compasses when it had no intention of doing so. Dinsmore believes such conduct is actionable under a claim for fraud in the inducement because the allegedly fraudulent promise to pay induced the sale of the compasses. Under *Huron Tool*, fraud in the inducement claims are not barred by the economic loss doctrine. *Huron Tool*, 209 Mich.App. at 375, 532 N.W.2d 541. Dinsmore therefore asserts that the fraud in the inducement claim entitles it to recover non-UCC damages.

This argument is based on the faulty conclusion that Dinsmore pleads a claim of fraud in the inducement. In *Huron Tool*, the plaintiff purchased a computer software system from the defendants. After plaintiff paid the full contract price, plaintiff discovered that the system needed to be modified to fit its needs. Plaintiff sued for fraudulent misrepresentations on the theory that defendants misrepresented the capabilities of the system. *Huron Tool* held that the plaintiff's claims were not based on fraud in the inducement because they concerned "the quality and characteristics of the software system sold by defendants" and therefore were "not extraneous to the contractual dispute." *Id.* at 375, 532 N.W.2d 541. Since plaintiff did not state a claim of fraud in the inducement, the court in *Huron Tool* restricted the plaintiff's remedies to the class of damages authorized by the UCC in accordance with the economic loss doctrine.

Dinsmore seizes upon the "quality and characteristics" language of *Huron Tool* to contend that a claim of fraud in the inducement is any fraud claim not based on the quality or characteristics of the goods sold. This is incorrect. *Huron Tool* describes fraud in the inducement as a fraud "extraneous to the contractual dispute." *Id.* at 373, 532 N.W.2d 541. When a buyer brings suit because of inadequate performance, as occurred in *Huron Tool*, determining whether the alleged fraud relates to the quality or characteristics of the goods sheds light on whether the fraud is extraneous to the contract. The present case involves a seller's suit for nonpayment. Dinsmore's argument that its nonpayment claim is independent of the quality of the compasses merely acknowledges the legal reality that every seller is entitled to payment for delivered goods, once the time for rejection has passed, regardless of quality. The fact that Dinsmore's complaint makes no reference to the quality or characteristics of the goods is irrelevant to determining if it pleads a fraud in the induce-

ment claim. Instead, the dispositive factor under *Huron Tool* is if Dinsmore has alleged a fraud extraneous to the contract.

### E. Application to the present case

 Reviewing the pleadings, affidavits, and other submissions, I find Dinsmore's suit to be a classic contract action rather than a fraud in the inducement claim. A claim to recover an unpaid balance is inextricably bound to the contract because the obligation to pay derives out of an express contract term. Bombardier's alleged wrongdoing, the failure to pay, is only legally actionable if Bombardier *in fact* had a legal duty to pay. Such a duty to pay can only arise from the contract, which proves that this dispute is contractual in nature. Bombardier's affirmative defense that Dinsmore delivered nonconforming (non-waterproof) goods further illustrates that this action sounds in contract. Whether the compasses conformed to the contract is a question which clearly requires interpretation of the contract. Thus, Dinsmore fails to allege a fraud extraneous to the contract because the true nature of Dinsmore's action is a claim for breach of contract.

In a breach of contract action, the economic loss doctrine restricts Dinsmore's damages to those allowed by the UCC. Dinsmore does not dispute that lost profit, intentional interference, and business reputation losses all fit under the definition of consequential damage. *Sullivan Industries, Inc. v. Double Seal,* 192 Mich.App. 333, 347, 480 N.W.2d 623 (Mich.Ct.App.1991) ("examples of consequential damages include lost profits"). As previously mentioned, a breaching buyer cannot be held liable for consequential damages.[2] Mich. Comp. Laws Ann. § 440.2708 (West 1994). Dinsmore's claims for lost profits, intentional interference, and business reputation damages are therefore dismissed.

Dinsmore's claims for mental anguish and exemplary damages must also be dismissed. Michigan's UCC does not allow

for exemplary damages "except as specifically provided in th[e UCC] or by other rule of law." *Sullivan Industries,* 192 Mich.App. at 351, 480 N.W.2d 623. Similarly, "mental and emotional distress damages [are] not ordinarily available in an action for bad-faith breach of contract." *Phillips v. Butterball Farms Company, Inc.,* 448 Mich. 239, 250, 531 N.W.2d 144 (Mich.1995). Dinsmore fails to present any reason that its claim is an exception to the *Sullivan Industries* and *Phillips* general rules barring mental anguish and exemplary damages. Thus, I dismiss these claims.

### 3. CONCLUSION

Defendant's joint Motion for Partial Summary Judgment is GRANTED and plaintiff's various claims for damages are DISMISSED except the claim for compensatory damages in the amount of $213,957.11.

IT IS SO ORDERED.

---

**2.** As distinguished from an aggrieved buyer who can recover for consequential damages. Mich.

Comp. Laws. Ann. § 440.2715 (West 1994).