# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 12, 2008

135117

GENERAL MOTORS CORPORATION,
       Plaintiff-Appellee,

v

ALUMI-BUNK, INC., and ERIC JAIN,
       Defendants-Appellants.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 135117
COA: 270430
Wayne CC: 04-422587-CB

On order of the Court, leave to appeal having been granted, and the briefs and oral arguments of the parties having been considered by the Court, we hereby REVERSE in part the July 24, 2007 judgment of the Court of Appeals, for the reasons stated in the Court of Appeals dissenting opinion. The trial court did not err in granting the defendants' motion for summary disposition on the plaintiff's claim of fraudulent inducement. Therefore, the ruling of the Wayne Circuit court is AFFIRMED in all respects.

YOUNG, J. (*concurring*).

I concur with the Court's order to reverse the Court of Appeals resolution of the fraudulent inducement claim. I write separately to indicate that, contrary to Justice Kelly's dissenting statement, the tort claim raised in this case is clearly barred by the economic loss doctrine because it is inextricably interwoven with plaintiff's claim of breach of contract.

The alleged basis for the contract was defendant's promise to "upfit" (modify) the vehicles it purchased from plaintiff in exchange for a discounted price. Contrary to Justice Kelly's analysis, this singular "promise" is the *sole* reason for the dispute between the parties. Indeed, a reader will be hard-pressed to find a distinction between the two complaint averments that Justice Kelly quotes in support of her dissenting statement.

Plaintiff claims that defendant made this upfit promise during the negotiation phase, but it was never made a part of the contract. Nevertheless, plaintiff contends that

defendant breached its promise to upfit the vehicles it purchased and that defendant never intended to upfit when it promised to do so. Thus, this promise to upfit is both the basis for the breach of contract claim and the fraudulent inducement claim.

The trial court and the Court of Appeals correctly determined that plaintiff's breach of contract claim, based on the violation of this promise, must be dismissed given that plaintiff failed to include this central term in the written contract. Moreover, there is no way to characterize these identical allegations as separate claims for breach of contract and fraudulent inducement. Accordingly, the trial court was required, as it did, to dismiss the fraud claim to prevent contract law from "drown[ing] in a sea of tort." *Neibarger v Universal Coop, Inc*, 439 Mich 512, 531 (1992). The Court of Appeals erred in reversing that decision.

KELLY, J. (*dissenting*).

I respectfully dissent from the Court's order reversing in part the judgment of the Court of Appeals. I believe that the Court of Appeals majority correctly held that defendants are not entitled to summary disposition on the fraudulent inducement of plaintiff, General Motors Company. Accordingly, I would affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2003, defendants sought to purchase hundreds of pickup trucks from a General Motors Corporation (GMC) dealer. Defendants ultimately purchased 148 trucks and obtained from plaintiff a Competitive Assistance Program (CAP) discount of $7,200 for each vehicle. Plaintiff contends that it granted the discount only because defendants agreed, both orally and in writing, to modify or "upfit" the vehicles before selling them. In this way, the vehicles would not compete with other, unmodified, GMC vehicles already on the market. However, the written contract contained no such requirement and defendants later sold the vehicles without modifications.

Plaintiff filed a complaint setting forth counts of negligent, innocent, and/or intentional misrepresentation, fraud, and breach of contract, among others. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff's claims were untenable because the written contract memorializing the CAP discount did not contain a requirement that the vehicles be "upfitted." Defendants also argued that the economic loss doctrine[1] applied to this case and barred plaintiff's tort

---

[1] The economic loss doctrine provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses." *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 520 (1992) (internal citations and quotation marks omitted).

claims. Also, it asserted, plaintiff was limited to the remedies available under the Uniform Commercial Code[2] (UCC). Plaintiff responded that the economic loss doctrine was inapplicable to plaintiff's fraudulent inducement claim, and, even if applicable, the claim remained viable because the fraud occurred before the contract existed.

The trial court granted defendants' motion for summary disposition, ruling that the fraud claim was not independent of the contract claim and was thus barred by the economic loss doctrine. The Court of Appeals majority affirmed in part and reversed in part, finding no error in the trial court's conclusion that the economic loss doctrine governed because "the contract regarding the CAP discount involved the conducting of business concerning trucks, which are 'goods' under the UCC."[3] However, the Court held that the trial court erred in concluding that the alleged fraud was so interwoven with the breach of contract claim that it could not be considered separately.[4] The Court concluded that outstanding questions of fact existed regarding the fraud claim. It referred to credible evidence that defendants had improperly induced plaintiff to enter into the contract by agreeing to "upfit" the vehicles without having a present intent to do so.[5]

We granted leave to appeal to determine (1) whether an exception to the economic loss doctrine exists for claims of fraudulent inducement, and (2) whether the fraud claims in this case are sufficiently distinguishable from the contract claims for purposes of applying the fraudulent inducement exception.[6]

## II. ANALYSIS

This Court officially recognized the economic loss doctrine in *Neibarger v Universal Cooperatives, Inc.*[7] *Neibarger* involved a plaintiff seeking economic loss damages as the result of a defective product. Commenting on the differences between an individual consumer's tort remedy for product liability compared with a commercial party suffering economic losses, the Court stated:

> [I]n a commercial transaction, the parties to a sale of goods have the opportunity to negotiate the terms and

---

[2] MCL 440.1101 *et seq.*

[3] *Gen Motors Corp v Alumi-Bunk, Inc*, unpublished opinion per curiam of the Court of Appeals, issued July 24, 2007 (Docket No. 270430), at 4.

[4] *Id*. at 7.

[5] *Id*. at 7-8.

[6] *Gen Motors Corp v Alumi-Bunk, Inc*, 480 Mich 1193 (2008).

[7] 439 Mich 512 (1992).

specifications, including warranties, disclaimers and limitations of remedies. Where a product proves to be faulty after the parties have contracted for sale and the only losses are economic, the policy considerations supporting products liability in tort fail to serve the purpose of encouraging the design and production of safer products.[8]

The Court went on to hold that "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC . . . ."[9]

The *Neibarger* Court also noted the policy rationale behind the economic loss doctrine:

> The purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e. the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles . . . are better suited for resolving claims involving unanticipated physical injury . . . . Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damages that the parties have, or could have, addressed in their agreement.[10]

MCL 440.1103 provides the basis for plaintiff's assertion that there is an exception to the economic loss doctrine for claims of fraud:

> Unless displaced by the particular provisions of [the UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, *fraud*, *misrepresentation*, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall *supplement its provisions*.[11]

---

[8] *Id*. at 523.

[9] *Id*. at 527-528.

[10] *Id*. at 521 (internal quotation marks and citation omitted).

[11] Emphasis added.

*Huron Tool & Engineering Co v Precision Consulting Services, Inc*[12] is the leading case discussing the fraudulent inducement exception to the economic loss doctrine.[13] *Huron Tool* involved the defendant manufacturer's claims for breach of contract, breach of warranty, fraud and misrepresentation arising out of defective software purchased by the plaintiff. After determining that the plaintiff's breach of contract claim was barred by the UCC's statute of limitations, the Court of Appeals addressed the viability of the plaintiff's fraudulent inducement claim:

> With regard to the specific intentional tort of fraud, courts generally have distinguished fraud in the inducement as the only kind of fraud claim not barred by the economic loss doctrine. We believe this distinction is warranted in light of the rationale of the economic loss doctrine.
>
> * * *
>
> In light of this rationale, we decline to adopt defendants' position that the economic loss doctrine precludes *any* fraud claim. Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior.[14]

The Court of Appeals limited its holding, however, stating that "a plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract.[15]

---

[12] *Huron Tool & Engineering Co v Precision Consulting Services, Inc,* 209 Mich App 365 (1995).

[13] Numerous jurisdictions have relied on *Huron Tool* for the proposition that an exception to the economic loss doctrine exists for claims of fraudulent inducement. See, e.g., *Werwinski v Ford Motor Co*, 286 F3d 661, 676 (CA 3, 2002); *Marvin Lumber & Cedar Co v PPG Industries, Inc*, 223 F3d 873, 885 (CA 8, 2000); *Giles v Gen Motors Acceptance Corp*, 494 F3d 865, 875 (CA 9, 2007); *Dinsmore Instrument Co v Bombardier, Inc*, 999 F Supp 968, 970 (ED Mich 1998); *Kaloti Enterprises, Inc v Kellogg Sales Co*, 283 Wis 2d 555, 581 (2005); *Valleyside Dairy Farms, Inc v AO Smith Corp*, 944 F Supp 612, 616 (WD Mich 1995).

[14] *Huron Tool, supra* at 371-373 (emphasis in original).

[15] *Id*. at 374.

Applying the principles expounded in *Neibarger*, MCL 440.1103, and *Huron Tool* to this case, it is clear that the majority's decision to reverse the Court of Appeals and grant summary disposition to defendants is unwarranted. This case involves a "transaction in goods." The UCC thus provides the relevant governing law,[16] and the economic loss doctrine would generally bar claims for economic loss related to the transaction, including breach of contract claims.[17] However, MCL 440.1103 explicitly recognizes that certain categories of claims are exempt from the economic loss doctrine. Specifically, claims for fraud are authorized by statute as a supplement to the remedies normally available under the UCC.[18] This is the premise that governs this dispute.

Moreover, as recognized in *Huron Tool*, fraudulent inducement claims are proper despite the limitations of the economic loss doctrine "where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior."[19] *Huron Tool* addressed claims of fraud interwoven with claims of breach of contract. It held that, in such claims, the alleged misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.[20] This type of fraud is not extraneous to the contractual dispute between the parties. It is another thread in the fabric of plaintiff's contract claim, supported by factual allegations identical to those supporting its breach of contract counts.[21] Such fraud does not induce a plaintiff to enter into a contract nor does it cause harm to a plaintiff distinct from that caused by the breach of contract.[22]

As determined by the Court of Appeals majority in the instant case, the fraud alleged by plaintiff was not interwoven with its breach of contract claim. Rather, the alleged fraud induced plaintiff to enter into the contract; it did not relate to the breach of contract itself. In fact, plaintiff's complaint specifically alleges, in pertinent part:

<u>FRAUD</u>
32. Defendants . . . *knowingly misrepresented* that any fleet vehicles purchased under the Competitive Assistance

---

[16] MCL 440.2102.

[17] *Neibarger*, *supra* at 520. The issue whether the trial court properly dismissed plaintiff's breach of contract claims is not the subject of this appeal.

[18] MCL 440.1103.

[19] *Huron Tool*, *supra* at 372.

[20] *Id*. at 373.

[21] *Id*.

[22] *Id*.

Program *would be upfitted* before the resale of those vehicles to the general public. . . .

\* \* \*

NEGLIGENT, INNOCENT AND/OR INTENTIONAL MISREPRESENTATION

39. Defendants . . . *represented to [plaintiff]* on several occasions that any fleet *vehicles* purchased under the Competitive Assistance Program *would be upfitted* before the resale of those vehicles to the public.[23]

Plaintiff's complaint thus makes clear that its fraud and misrepresentation claims are not based on a breach of the contract itself. They are based, instead, on defendants' representations made before the contract was executed. Accordingly, the Court of Appeals correctly distinguished the two intrinsically different allegations of misconduct by defendant—fraudulent inducement and breach of contract—in holding that defendants are not entitled to summary disposition.

This analysis is also consistent with the Court's holding in *Rutan v Straehly*.[24] In *Rutan*, the Court held that fraud claims generally cannot be predicated on future actions. However, the Court stated that "an unfilled promise to perform in the future is actionable when there is evidence that it was made with a present undisclosed intent not to perform.[25] I agree with the Court of Appeals majority, which relied on *Rutan*. The Court concluded that plaintiff presented ample evidence of an unfulfilled promise to perform on the part of defendants. It presented ample evidence that, while defendants agreed to "upfit" the vehicles, defendants had a present intent to sell the vehicles without doing so. This situation fits squarely within *Rutan*, MCL 440.1103, the fraudulent inducement exception to the economic loss doctrine, and *Huron Tool*.

The majority's reliance on the Court of Appeals dissent is unfounded. The dissent misapplies *Huron Tool* and ignores the import of MCL 440.1103 and *Rutan*.[26] The dissenting opinion correctly states that, pursuant to *Huron Tool*, a plaintiff must allege a claim for fraudulent inducement separate from a claim of breach of contract. However, it disregards documentary and testimonial evidence presented by plaintiff that during the negotiating process, defendants made several misrepresentations, both written and oral,

---

[23] Plaintiff's complaint at 7, 9 (emphasis added).

[24] *Rutan v Straehly,* 289 Mich 341 (1939).

[25] *Id*. at 348-349.

[26] In fact, Justice Young's concurrence and the Court of Appeals dissent both fail to cite MCL 440.1103 or *Rutan*. Justice Young also fails to recognize the significance of *Huron Tool* whatsoever.

that the purchased vehicles would be "upfitted." Therefore, the dissenting opinion's statement that "there is a glaring absence of any evidence at all that would even inferentially support [plaintiff's claim for fraudulent inducement]" is inaccurate.[27]

Similarly, *Huron Tool* evinces no intent to subvert the foundational rule of Michigan jurisprudence, embodied in MCR 2.111(A)(2), that a party may plead in the alternative even "where proof of one claim must defeat the existence of another."[28] A plaintiff's "antithetical pleadings" are not grounds for summary judgment.[29] Thus, the fact that plaintiff pleaded alternate theories of liability flowing from the same facts—fraudulent inducement and breach of contract—does not support a rejection of its fraudulent inducement claim. The proper scope of analysis under *Huron Tool* is the fraud claim itself, as stated in plaintiff's complaint. That claim should be analyzed to determine if it relates to a contractual provision or to the separate breach of contractual theory of liability alleged in the complaint. If it relates to a contractual provision, the economic loss doctrine bars the fraud claim. If not, the claim survives on its own.

It is undisputed that the contract at issue has no provision for "upfitting." Hence, plaintiff's fraudulent inducement claim does not relate to a contractual provision, and the claim should proceed. Speculation about whether plaintiff should have included an "upfit" provision in the contract is an issue involving the contract, wholly irrelevant to the fraudulent inducement claim.

## III. CONCLUSION

I believe that the Court of Appeals majority correctly held that defendants are not entitled to summary disposition on plaintiff's claims for fraudulent inducement.

---

[27] *Gen Motors Corp v Alumi-Bunk, Inc,* unpublished Court of Appeals dissenting opinion by Kelly, J., issued July 24, 2007 (Docket No. 270430), at 5.

[28] *Abel v Eli Lilly & Co*, 418 Mich 311, 335 (1984).

[29] *Id*.

Pursuant to MCL 440.1103, *Huron Tool,* and *Rutan*, claims of fraudulent inducement are not barred by the economic loss doctrine. Plaintiff presented credible evidence of defendant's precontractual fraud and misrepresentations distinct from its claims of breach of contract. Therefore, it is entitled to its day in court. Accordingly, because questions of fact remain unanswered regarding plaintiff's allegations, I would affirm the judgment of the Court of Appeals.

CAVANAGH, J., joins the statement of KELLY, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 12, 2008

_____
Clerk