Walter SNEYD, and Thomas Weber, Plaintiffs,

v.

INTERNATIONAL PAPER CO., INC., Xpedx Corp., Mead Corp., and Zellerbach Corp., Defendant.

CIV. No. 99–40477.

United States District Court, E.D. Michigan, Southern Division.

May 18, 2001.

Holly A. Georgell, McGuire, Woods, Chicago, IL, for defendant represented by Georgell.

Jay L. Grytdahl, McGuire, Woods, Chicago, IL, for defendant represented by Grytdahl.

John W. Mason, John W. Mason Assoc., Dearborn, MI, for plaintiff represented by Mason.

James E. Roach, Vercruysse, Metz, Bingham Farms, MI, for defendant represented by Roach.

Dean C. Robinette, John W. Mason Assoc., Dearborn, MI, for plaintiff represented by Robinette.

Robert M. Vercruysse, Vercruysse, Metz, Bingham Farms, MI, for defendant represented by Vercruysse.

## OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Defendants' amended motion for summary judgment [docket entry 47]. The Court has assessed both parties' submissions and conducted a hearing in open court. For reasons set forth below, the Court grants Defendants' motion.

## I BACKGROUND

On January 12, 1998, Defendant Mead Corporation ("Mead") hired Plaintiffs to work as account managers for Zellerbach Corporation ("Zellerbach"), which was a division of Mead. Plaintiffs allege that Defendants Mead and Zellerbach had contracted to employ Plaintiffs "for the definite time period of two years." (FAC[1] at ¶ 13.) Defendants retort that their agreement to hire Plaintiffs was an at-will contract. In July, 1998, Defendant Mead sold Zellerbach to Defendant International Paper Company ("International"). Defendant International, in turn, combined the "Fine Paper Sales Divisions" of Zellerbach and Defendant "xpedx" Corporation ("xpedx"). On October 22, 1998, Defendant International discharged Plaintiffs.

Plaintiffs then brought suit in this Court. The crux of Plaintiffs' position is that Defendants failed to adhere to the agreement to employ each of them for two years. From that theory, Plaintiffs assert the following causes of action as to Defendants Mead and Zellerbach only: silent fraud (count I); fraudulent misrepresentation (count II); innocent misrepresentation (count III); and negligence (count IV). Plaintiffs assert the following cause of action as to Defendants International and xpedx only: wrongful discharge (count V). Plaintiffs assert a claim of promissory estoppel (count VII) against all Defendants.

---

**1.** "FAC" refers to Plaintiffs' first amended complaint [docket entry 15].

Plaintiffs also seek exemplary damages from Mead and Zellerbach, which they style as "Count VI." Because exemplary damages are a sanction, and not an independent cause of action, the Court will not analyze Plaintiffs' claim for exemplary damages as a separate cause of action. Defendants now move for summary judgment.

## II LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated that, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.

1990), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 150 (6th Cir.1995).

## III ANALYSIS

### A. Silent Fraud

 The elements of fraudulent misrepresentation are: (1) a material, false representation; (2) the defendant's knowledge of its falsity; (3) the defendant's intent that the plaintiff rely upon the misrepresentation; (4) the plaintiff's reliance; and (5) injury to the plaintiff. *McMullen v. Joldersma,* 174 Mich.App. 207, 435 N.W.2d 428, 430 (1988) (citation omitted).[2] Where the defendant's failure to divulge a fact he has the legal duty to disclose satisfies the element of a material misrepresentation, there is a case of silent fraud or fraudulent concealment. *Id.* The most common situation in which the legal duty to disclose arises occurs when a plaintiff makes inquiries of a defendant and that defendant "makes incomplete replies that are truthful in themselves but omit material information." *Hord v. Environmental Research Institute of Mich.,* 463 Mich. 399, 617 N.W.2d 543, 550 (2000).

 The Court grants summary judgment to Defendants as to this cause of action because Plaintiffs, as they admitted at the hearing, can point to no legal authority for the proposition that a corporation has a duty to disclose to potential employees that it is contemplating the sale of, or has decided to sell, a subsidiary

corporation that it owns and for whom those potential employees would work. Closely-analogous authority, in fact, supports the opposite conclusion. *See In re General Motors Class E Stock Buyout Secs. Litig.,* 694 F.Supp. 1119, 1128–30 (D.Del.1988) (corporation and its directors have no duty to disclose negotiations regarding the sale of a subsidiary with the employees of that subsidiary). This observation is particularly damning for Plaintiffs' case because, for reasons discussed *infra,* Plaintiffs were at-will employees who had no legitimate expectation of job security. Thus, even if the facts are as Plaintiffs allege, Plaintiffs have failed to adduce evidence from which a reasonable jury could conclude that Mead and Zellerbach violated any duty to divulge that they owed to Plaintiffs. For this reason, the Court grants summary judgment to Defendants as to count I.

### B. Fraudulent Misrepresentation

 The elements of fraudulent misrepresentation, as discussed above, are the following: (1) a material, false representation; (2) the defendant's awareness of its falsity; (3) the defendant's intent that the plaintiff rely upon the misrepresentation; (4) the plaintiff's reliance; and (5) injury to the plaintiff.

To support the existence of a material, false representation, Plaintiffs aver that "MEAD and ZELLERBACH intentionally made false representations of material facts to Plaintiff[s] regarding their financial viability, as set forth in the preceding paragraphs." (FAC at ¶ 35.) Defendants argue that the element of a misrepresentation is lacking. Defendants are correct, for three reasons.

---

**2.** Because all parties acquiesce in the application of the substantive law of Michigan, the Court will apply Michigan law and need not conduct a choice-of-law analysis sua sponte. *GBJ Corp. v. Eastern Ohio Paving Co.,* 139 F.3d 1080, 1085 (6th Cir.1998).

First, if, as Plaintiffs allege, Mead and Zellerbach did represent that they were financially healthy, that would have been a case of mere puffery, which is not actionable for fraud. *Cf. Charal v. Royal Appliance Mfg. Co.*, 64 F.3d 663, 1995 WL 490131 at *3 (6th Cir.1995) (holding that puffery is insufficient to claim securities fraud).

Second, Plaintiffs adduce no evidence that Mead and Zellerbach were not, in fact, financially viable. Because there is no evidence of the falsity or potential to mislead of any statement regarding Zellerbach's financial condition, the claim of fraud against Zellerbach and Mead cannot survive summary judgment. *See Hord*, 617 N.W.2d at 549.

Third, Plaintiffs have admitted that the element of a material misrepresentation does not exist. Plaintiff Sneyd testified that no one made any false representations to him regarding Zellerbach's financial viability. (Pl.Ex. 1, Tr. 66:1–7.) Plaintiff Weber, in a similar vein, admits that no one made any false representations about the financial viability of Mead. (Pl.Ex. 2, Tr. 67:3–12.)

For these three reasons, the Court grants summary judgment to Defendants as to this cause of action.

### C. Innocent Misrepresentation

■ Under the law of Michigan, the elements of innocent misrepresentation are: (1) an affirmative misrepresentation; (2) reliance; and (3) causation. *Krieger v. Gast*, No. 4:99–CV–86, 2000 WL 288442, at *14 (W.D.Mich. Jan.21, 2000) (citations omitted). Unlike a claim for fraudulent misrepresentation, a cause of action for negligent misrepresentation does not require that the defendant possess scienter or intend that the plaintiff rely on the defendant's misrepresentation. *Id.*

■ Defendants argue that the element of a misrepresentation is absent. Plaintiffs claim that Defendants Mead and Zellerbach made two misrepresentations: (1) that they knew and failed to disclose that they would sell Zellerbach (FAC at ¶ 24); and (2) that they misrepresented their financial viability (FAC at ¶ 35). (FAC at ¶ 44.) Because the former alleged claim requires scienter, it is not actionable for innocent misrepresentation. The second alleged misrepresentation is that Mead and Zellerbach misrepresented their financial viability. For reasons discussed above, no reasonable factfinder could credit this allegation. The Court grants Defendants summary judgment as to this claim.

### D. Negligence

■ The elements of negligence are: (1) the defendant's duty; (2) the defendant's breach of that duty; (3) the plaintiff's damages; and (4) a causal relationship between the breach and damages. *McGoldrick v. Holiday Amusements, Inc.*, 242 Mich.App. 286, 618 N.W.2d 98, 104 (2000).

■ Defendants argue that the element of a duty is absent. Plaintiffs allege that Defendants Mead and Zellerbach "owed a duty to Plaintiffs to inform Plaintiffs that ZELLERBACH would be and/or could be sold to Defendants INTERNATIONAL and XPEDX." (FAC at ¶ 50.) Regarding the contention that Defendants owed Plaintiffs a duty to warn them that Zellerbach could be sold, that contention is incorrect because, it should be obvious, any corporation could be sold. No businessman need be reminded of anything so apparent.

As to Mead and Zellerbach's alleged duty to inform Plaintiffs that Zellerbach would be sold, Plaintiffs, as discussed above, have pointed to no authority that such a duty could exist. The Court there-

fore grants summary judgment to Defendants as to this claim.

This cause of action also is duplicative of Plaintiffs' claim of innocent misrepresentation and is dismissed on that ground as well. *See Mecca v. Shang*, 258 A.D.2d 569, 685 N.Y.S.2d 458, 460 (N.Y.App.Div.1999).

### E. Wrongful Discharge

■ Plaintiffs allege that on "January 12, 1998, the Plaintiffs and MEAD and ZELLERBACH created a written employment contract for a definite term of two years." Plaintiffs assert a theory of "wrongful discharge in breach of employment contract pursuant to *Toussaint* as to Defendants International and xpedx." (FAC at 9.)

In *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880 (1980), the Supreme Court of Michigan recognized that an employer's representation that it will terminate an employee only for cause can give rise to rights enforceable in contract. *Iman v. Metropolitan Life Ins. Co.*, No. 87–4000, 1988 WL 249717, at *1 (E.D.Mich. May 23, 1988) (Suhrheinrich, J.). Where an employer has not agreed to provide its employee with job security, however, it may "protect itself by entering into a written contract which explicitly provides [a disclaimer to the effect] that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer." *Toussaint*, 408 Mich. at 612 n. 24, 292 N.W.2d 880. Defendants argue that there were such disclaimers in this case, and that there is thus no genuine issue of material fact as to whether Plaintiffs could only be discharged for cause. Plaintiffs retort that any boilerplate statements to the effect that Plaintiffs had at-will employment contracts "are accordingly counterbalanced and overcome by the Plaintiffs' respective contracts for a term of years." (Pl. Br. at 31.)

The Court must therefore decide whether competent evidence supports the heart of Plaintiffs' theories, that each had an employment contract "for the definite time period of two years." Defendants adduce evidence that the employment contracts of Plaintiffs were at will, and not for a term of two years. Specifically, Defendants point to "employment applications" that both Plaintiffs signed on the same day they contracted to work for Mead and Zellerbach. Each of those applications states that "*[m]y employment is not guaranteed for any term, and my employment may be terminated by the Company or by myself at any time and for any reason. No management official is authorized to make any oral assurance of promise of continued employment.*" (Def. Ex. 5–6 (emphasis added).) It is also noteworthy that the text of Mr. Sneyd's contract (although not Mr. Weber's) plainly states that "*I need to remind you, as stated in the application, should you choose to do so, you are free to terminate your employment at any time in the future, as can the Company.*" (Pl.Ex. 8 (emphasis added).)

Plaintiff Sneyd's contract contains just the sort of disclaimer of which the *Toussaint* court wrote. Summary judgment in favor of Defendants is therefore warranted as to Plaintiff Sneyd's cause of action. *See Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 468 N.W.2d 845, 847–48 (1991) (reasoning that the contract's clear disclaimer negated any prior oral agreements that employment could only be terminated for just cause).

■ Regarding Plaintiff Weber's disclaimer, the Court faces a somewhat closer call. The most relevant disclaimer for him exists not in his contract, but in the employment application he filled out immediately before signing that contract. The

Court nonetheless finds that such a disclaimer extinguished any reasonable expectation that Plaintiff Weber was entitled to employment for a term of years. Although that disclaimer was not part of Mr. Weber's contract, he was aware of the disclaimer that his employment was at will, and any contrary expectations he may have had are therefore unreasonable. *See Rowe v. Montgomery Ward & Co., Inc.,* 437 Mich. 627, 473 N.W.2d 268, 276–78 (1991); *cf. Adams v. Ford Motor Co.,* 847 F.Supp. 1365, 1376–77 (E.D.Mich.1994) (Rosen, J.) (holding that a disclaimer contained in a policy manual vitiated the plaintiffs' reasonable expectation of contract rights even in the face of the employer's later conduct that might have been inconsistent with the disclaimer); *Transou v. Electronic Data Systems,* 767 F.Supp. 1392, 1399 (E.D.Mich.1991) (Gadola, J.) (noting that a disclaimer is effective so long as the means used to distribute it were "uniform and reasonable") (citation omitted). Defendants are thus entitled to summary judgment as to this cause of action regarding Mr. Weber as well. *See Clement–Rowe v. Michigan Health Care Corp.,* 212 Mich.App. 503, 538 N.W.2d 20, 22–23 (1995).

■ Plaintiffs nonetheless argue that each had an employment contract "for the definite time period of two years." In support of this proposition, they point to extrinsic evidence (Pl. Br. at 5–12) and "durational terms contained within the Plaintiffs' contracts (Exs. 8 and 9)."

The "durational terms" upon which Plaintiffs rely are the following, as found in Mr. Weber's contract:

**Base Salary:** $ 10,834 per month. This will be paid on the last working day of each month, for the first 24 months of employment. . . .

* If annual trading margin at the end of the second year exceeds $300,000, you will be guaranteed one more year of straight salary.

**Commission:** At the end of 24 months, or earlier if it is of mutual agreement by you and your manager, you will be transitioned to a "straight commission" sales compensation program at a rate of 24% of commissionable gross profit in your territory.

Mr. Sneyd's contract contains the same language, except that the sentence following the asterisk is absent and the salary amount is different.

The most probable construction of the above-quoted language is that it governs Plaintiffs' terms of compensation, and not that it establishes any sort of guaranteed period of employment. Where, as here, there is an express disclaimer to the effect that employment is at will, and there is no "dispositive evidence of plaintiff's legitimate expectation of definite employment created by defendant," the Court will award the defendant summary judgment as to a plaintiff's claim of wrongful discharge. *Freeman v. Unisys Corp.,* 898 F.Supp. 485, 490 (E.D.Mich.1995) (Gadola, J.).

Regarding the parol evidence that Plaintiffs adduce to support the position that Mead and Zellerbach created a legitimate expectation of employment for two years, those statements do not undermine the protection that such disclaimers afford employers. *See Scholz,* 468 N.W.2d at 849 (reasoning that a written agreement providing that employment was at will superseded a preexisting, implied, oral agreement).

For the reasons set forth above, the Court grants summary judgment to Defendants as to this cause of action.

**F. Promissory Estoppel**

■ The elements of promissory estoppel are (1) a promise; (2) that the promi-

sor should reasonably expect to induce the promisee's action of a definite and substantial character; and (3) that caused reliance or forbearance of that nature in circumstances such that the promise must be enforced to avoid injustice. *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich.App. 675, 599 N.W.2d 546, 552 (1999).

 The Court grants summary judgments in favor of Defendants as to this claim because where, as here, there is an express at-will disclaimer, a cause of action for promissory estoppel will not lie regardless of parol evidence contradicting that disclaimer. *See id.*

Plaintiffs' attempt to factually distinguish *Novak* are unavailing. Plaintiffs contend that they, unlike the *Novak* plaintiff, had a written contract for a term of years, and not mere oral assurances. (Pl. Br. at 32.) Plaintiffs misunderstand *Novak*.

The durational language upon which Plaintiffs rely, quoted above, is analogous to the language *in the Novak plaintiff's contract* to the effect that "if plaintiff successfully handled his father's former accounts for two years, he would then begin to receive full commissions on those accounts." *Id.* at 549. The *Novak* plaintiff, like Plaintiffs in this case, therefore had both written contractual provisions similar to Plaintiffs' and oral assurances. Although it is not clear that the *Novak* plaintiff relied upon that contractual language, it is clear that the *Novak* court was well-aware of that provision and found it no obstacle to the conclusion that the plaintiff's promissory estoppel claim must collapse upon a motion for summary disposition.

For reasons set forth above, the Court grants summary judgment in favor of Defendants as to Plaintiffs' claim of promissory estoppel.

## IV CONCLUSION

The Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED.**

**SO ORDERED.**